**No. 14-35552**

**United States Court of Appeals**
**For the Ninth Circuit**

---

Student,

*Defendant-Appellant*

V.

Forest Grove School District,

*Plaintiff-Appellee*

---

On Appeal From United States District Court
For the District of Oregon

The Honorable John. V. Acosta, U.S. Magistrate Judge
Civil Case No. 3:12-cv-01837-AC

---

**Plaintiff-Appellee's Answering Brief**

---

Nancy J. Hungerford, OSB No. 812685
E-mail: Nancy@hungerfordlaw.com
Joel E. Hungerford, OSB No. 140940
E-mail: Joel@hungerfordlaw.com
THE HUNGERFORD LAW FIRM
PO Box 3010
Oregon City, Oregon 97045
Telephone: (503) 781-3458
Facsimile: (503) 655-1429

1 – DISTRICT'S ANSWERING BRIEF

## TABLE OF CONTENTS

I.    TABLE OF CONTENTS ............................................................... 2

II.   TABLE OF AUTHORITIES .......................................................... 4

III.  ISSUES PRESENTED FOR REVIEW ............................................. 7

IV.   STATEMENT OF THE CASE ....................................................... 7

V.    SUMMARY OF THE ARGUMENT ............................................... 8

VI.   STANDARD OF REVIEW ........................................................... 9

VII.  ARGUMENT ........................................................................... 10

   A.  The Burden of Proof Is On The Student For Those Portions Of The
       District Court's Opinion And Order That Student Has Appealed ........ 10

   B.  The District Court Properly Gave ALJ Messecar's Final Order Little
       Deference Because The ALJ's Final Order Was Not Well Reasoned,
       Thorough, Or Careful........................................................... 10

   C.  The District Court Did Not Err In Its Determination That Any Procedural
       Violations Of The IDEA Did Not Deny Parents The Opportunity To
       Meaningfully Participate In The Development Process ...................... 14

       1.   The Legal Standard Established By The IDEA Requires There
            To Be Either (1) A Loss Of Educational Opportunity For A
            Student, Or (2) A Serious Infringement Of The Parent's
            Opportunity To Participate In The IEP Process Before A Denial
            Of FAPE Can Be Found ........................................................ 14

       2.   The Federal District Court Properly Found That The District's
            Alleged Failure To Send Prior Written Notices ("PWNs") To
            The Parents Did Not Constitute A Denial Of A Free
            Appropriate Public Education ("FAPE") .............................. 15

3.      The District Court Properly Found That The District Did Not Fail To Consider Student's Initial Private Evaluations, Contrary To Student's Assertion ........................................................... 20

D.  The District Court Used The Correct Legal Standard When It Properly Held That The District Did Not Fail To Provide Student A FAPE ...... 22

1.      The District Court Did Not Err In Finding That The District Created Appropriate Transition Goals In the March 2011 And November 2011 IEPs ............................................................. 23

2.      The District Court Did Not Err In Finding That Student's IEP Was Reasonably Calculated To Provide Student With An Educational Benefit With, Did Not Treat Student Generically, and Had Goals That Were Measurable ................................... 25

3.      The District Court Did Not Err When It Refused To Require All District Teachers To Adopt The Teaching Method Of A Single Teacher That Student's Parents Liked ..................................... 29

4.      The District Court Did Not Err In Finding That The District Provided Adequate Transition Services During All But Two Months After The Student Turned Age 16 ............................ 30

5.      The District Court Did Not Err In Finding That The District Appropriately Addressed Student's Anxiety Needs ............... 34

6.      The District Court Did Not Err In Finding That The Student's Placement Determination Met The Requirements Of The IDEA ...................................................................................... 36

V.     CONCLUSION ........................................................................... 36

# TABLE OF AUTHORITIES

*A.I. ex rel. Iapalucci v. District of Columbia*, 402 F Supp 2d 152
(D DC 2005) ............................................................................ 8, 22

*Anchorage School Dist. v. M.P.*, 456 F. App'x 706, 57 IDELR 242
(9th Cir. 2011) ............................................................................ 9

*Ashland School Dist. v. Parents of Student R.J.*, 585 F Supp 2d 1208, 1212 (D Or
Oct 6, 2008) ................................................................ 9-10, 27-28

*Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884
(9th Cir. 1995) ................................................................ 10-12, 26

*C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1159
n.1 (9th Cir. 2011) ............................................................................ 9

*C.C. v. Fairfax County Bd. of Educ.*, 879 F Supp 2d 512 (ED Va 2012) .............. 13

*Clyde K. v. Puyallup Sch. Dist.*, 35 F.3d 1396 (9th Cir. 1994), *superseded by
statute on other grounds, as stated in M.L. v. Federal Way School Dist.*, 341
F.3d 1052 (9th Cir. 2003) ................................................................ 10

*E.M. v. Pajaro Unified Valley School*, 758 F.3d 1162, 1170 (9th Cir. 2014) ....... 10

*Gregory K. v. Longview Sch. Dist.*, 811 F2d 1307, 1311 (9th Cir. 1987) ............. 11

*Gwinnett County School Dist. v. J.B. ex rel. D.B.*,
398 F Supp 2d 1245 (ND Ga 2005) .......................................... 13-14

*Forest Grove School Dist. v. T.A.*, 523 F3d 1078, 1083 (9th Cir 2008) ................. 9

*Forest Grove School Dist. v. T.A.*, 638 F.3d 1234, 56 IDELR 185
(9th Cir. 2011) ................................................................ 10

*James M. ex rel. Sherry M. v. Hawai'i,* 803 F. Supp. 2d 1150
(D. Hawai'i 2011) ................................................................ 13

*J.G. v. Douglas Cnty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008) ...................... 9

*K.D. v. Dep't of Education*, 665 F.3d 1110, 1117 (9th Cir. 2011) ....................... 10

*Lachman v. Illinois St. Bd. of Educ.*, 852 F.2d 290 (7th Cir.), *cert. denied,*
    488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988) ................................... 16

*Mason Community Sch. Dist*, 21 IDELR 241 (SEA IA 1994) .............................. 32

*M.L. v. Federal Way School District*, 394 F 3d 634 (9th Cir. 2005) .................... 19

*M.M. ex rel. L.R. v. Special School Dist. No. 1*, 512 F3d 455, 460-61
    (8th Cir 2008) ................................................................................................... 29

*M.M. v. Dist. 0001 Lancaster County Sch.*, 702 F.3d 479, 487 (8th Cir 2012) ..... 34

*Nalu Y. ex rel. Patty Y. v. Department of Educ., Hawaii,*
    858 F Supp 2d 1127 (D Hawaii 2012) ............................................................. 13

*N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1207 (9th Cir. 2008) ........ 9

*Ojai Unified Sch. Dist. et al v. Jackson*, 4 F.3d 1467, 1471-72 (9th Cir. 1993), *cert.
    denied*, 513 U.S. 825, 115 S. Ct. 90, 130 L.Ed.2d 41 (1994) ..................... 11-12

*R.B. v. Napa Valley*, 496 F 3d 932 (9th Cir. 2007) ............................................... 19

*Reid ex rel. Reid v. District of Columbia*, 401 F3d 516 (DC Cir 2005) ................ 14

*School Comm. v. Department of Educ.*, 471 U.S. 359 (1985) ............................... 11

*Seattle School Dist., No. 1 v. B.S.*, 82 F 3d 1493 (9th Cir 1996) ..................... 8, 23

*Town of Burlington v. Dept. of Educ.*, 736 F.2d 773, 792 (1st Cir. 1984) ............. 11

*United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc) ........... 10

*Union Sch. Dist. v. Smith*, 15 F.3d 1519 (9th Cir.), *cert. den*, 513 U.S. 965,

115 S. Ct. 428, 130 L.Ed.2d 341 (1994) .......................................................... 11

*Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J*, 2005 WL 50130, *13-14 (D Or Jan 11, 2005) ........................................................................................ 28-29

*West Linn-Wilsonville School District v. Student*, 2014 WL 3778571, *13 (D Or July 30, 2014) ............................................................................................... 28

*W.G. v. Bd. of Trs. of Target Range Sch. Dist, No. 23,*
   960 F2d 1479 (9th Cir 1992) .................................................................... 15, 19

20 U.S.C. §1414(a)(2)(A) ............................................................................. 24

20 USC §1414(d)(1)(A)(i)(VIII)(aa) .............................................................. 23

34 CFR § 300.513(a) ..................................................................................... 19

71 Fed. Reg. 46,579 (2006) .......................................................................... 32

ORS 343.167(3) ............................................................................................ 19

OAR 581-015-2190 ................................................................................. 15, 20

## ISSUES PRESENTED FOR REVIEW

The School District ("the District") presents the following issues for review:

1. Did the federal district court fail to give the weight required by the IDEA to the administrative law judge's ("ALJ's") opinion when it found that the ALJ's Final Order was due minimal deference because it was unsupported by case law and factually selective to the point of ignoring testimony which contradicted the ALJ's findings?

2. Did the federal district court err when it determined that the District's notice to parents met the requirements of the IDEA?

3. Did the federal district court err when it determined that the school district did not fail to provide a FAPE to Student, given the District's evaluation, implementation of the IEP, and consideration of alternative education placements?

## STATEMENT OF THE CASE

The District adopts the "Factual & Procedural Background" contained in the federal district court's Opinion and Order. District Court Opinion and Order, pp. 1-9[1] (ER 1-17). A more detailed discussion regarding disputed facts is included in the context of resolving the numerous implementation issues presented.

---

[1] The Westlaw citation for the District Court Opinion and Order is *Forest Grove School Dist. v. Student*, 2014 WL 2592654 (D.Or.). Citations correspond thusly.

## SUMMARY OF THE ARGUMENT

In the ALJ's Final Order the ALJ substantially (and in some cases completely) ignored the testimony of key witnesses, and failed to provide a cogent, well-reasoned analysis for her findings and the remedies imposed on the District. Additionally, much of the ALJ's Final Order was unsupported by caselaw and ignored well-established legal standards such as the fact that an "appropriate education" under IDEA does not mean those services designed to maximize a student's potential (*see, Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley*, 458 US 176, 198, 102 S Ct 3034, 73 L Ed 2d 690 (1982)). Rather, IEPs need to be reasonably calculated to provide some meaningful educational benefit (*see A.I. ex rel. Iapalucci v. District of Columbia*, 402 F Supp 2d 152, 163 (D DC 2005)) or provide a "basic floor of opportunity" to a student. *Seattle School Dist., No. 1 v. B.S.*, 82 F 3d 1493, 1500 (9th Cir 1996).

On appeal, the district court found that the ALJ had ignored important testimony and held the District to standards higher than those established by law. The district court reevaluated the ALJ's findings, giving her the appropriate level of deference, and ultimately issued its own order that was thorough, careful, and supported by caselaw and the evidence in the record. Now on appeal to this Court,

Student makes many of the same arguments to this Court that were already considered and rejected by the district court.

## STANDARD OF REVIEW

This Court uses a mixed standard of review when reviewing a district court's findings in an IDEA case. *See Anchorage School Dist. v. M.P.*, 456 F. App'x 706, 57 IDELR 242 (9th Cir. 2011) (stating the standards of review for the Ninth Circuit's review of district court decisions in IDEA cases).

Questions of law are reviewed de novo, as are mixed questions of law and fact unless the mixed question is primarily factual. *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1207 (9th Cir. 2008); *see, also, Forest Grove School Dist. v. T.A.*, 523 F3d 1078, 1083 (9th Cir 2008).

Conversely, a district court's factual findings are reviewed for clear error, even if those findings rest solely on the administrative record. *Forest Grove* at 1083-84; *see, also, J.G. v. Douglas Cnty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008).

A district court's equitable determination as to reimbursement of expenses is reviewed for abuse of discretion. *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1159 n.1 (9th Cir. 2011); *see, also, Forest Grove School Dist. v. T.A.*, 523 F3d 1078, 1084 (9th Cir 2008); and *Ashland School Dist. v.*

*Parents of Student R.J.*, 585 F Supp 2d 1208, 1212 (D Or Oct 6, 2008). A district court's decision is reversible under the abuse of discretion standard only if the district court's decision was "[1] illogical, [2] implausible, or [3] without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc). *See, also, Forest Grove School Dist. v. T.A.*, 638 F.3d 1234, 56 IDELR 185 (9th Cir. 2011) (citing *Hinkson*).

## ARGUMENT

### A. The Burden of Proof Is On The Student For Those Portions Of The District Court's Opinion And Order That Student Has Appealed.

Because Student has raised all issues before the Court in this appeal, Student bears the burden of proving that the district court erred in the findings of fact and conclusions of law that the plaintiff has placed at issue. *E.M. v. Pajaro Unified Valley School*, 758 F.3d 1162, 1170 (9th Cir. 2014) (citing *K.D. v. Dep't of Education*, 665 F.3d 1110, 1117 (9th Cir. 2011)); *see, also, Clyde K. V. Puyallup Sch. Dist. No. 3*, 35 F3d 1396, 1399 (9th Cir 1994).

### B. The District Court Properly Gave ALJ Messecar's Final Order Little Deference Because The ALJ's Final Order Was Not Well Reasoned, Thorough, Or Careful.

In this case, the district court acknowledged that it was required to give the ALJ's decision "due weight" under *Capistrano Unified School Dist. v.*

*Wartenberg*, 59 F.3d 888, 891 (9th Cir. 1995). District Court Opinion and Order, p. 12 (ER 20). However, the district court also noted that the degree of deference due to the ALJ is largely "a matter for the discretion of the courts," and "the amount of deference increases when they are thorough and careful," again citing *Capistrano* at 891. *Id.* Ultimately, the district court is free to accept or reject the findings of the ALJ in part or in whole. *Gregory K. v. Longview Sch. Dist.*, 811 F2d 1307, 1311 (9th Cir. 1987), *citing Town of Burlington v. Dept. of Educ.*, 736 F.2d 773, 792 (1st Cir. 1984), *aff'd sub nom, School Comm. v. Department of Educ.*, 471 U.S. 359 (1985).[2]

Applying the *Capistrano* standard, the district court found that the ALJ's findings of fact were neither careful nor thorough and, therefore, due little deference. District Court Opinion and Order, p. 12. The district court enunciated several reasons why it gave little deference to the ALJ's factual findings. *Id.* First, although the ALJ's opinion is lengthy, it consists mostly of extensive descriptions of exhibits and large blocks of quotes from each IEP. *Id.* Second, and more

---

[2] As noted by the district court on pages 10-11 (ER 17-18) of the District Court's Opinion and Order, the Ninth Circuit Court of Appeals has stated that courts in general must give "due weight" and "accord deference" to the policy decisions of the District, as "courts should not substitute their own notions of sound educational policy for those of the school authorities which they review." *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir.), *cert. den*, 513 U.S. 965, 115 S. Ct. 428, 130 L.Ed.2d 341 (1994) [citations omitted]; *Ojai Unified Sch. Dist. et al v. Jackson*, 4

- DISTRICT'S ANSWERING BRIEF

important to the district court, the ALJ ignored the testimony of both parties'
experts, some of "which sheds significant light on the issues presently before the
court and often contradict the ALJ's conclusions of fact and law." *Id.*

The district court found that the ALJ's conclusions of law were also
deficient and entitled to little deference because the ALJ applied "an arbitrarily
high" and inaccurate standard, which was not only unsupported by caselaw, but
actually "bears little resemblance to the legal standards established by decades of
court interpretation of the IDEA." District Court Opinion and Order, p. 12 (ER 20-
21). Not only was the ALJ overly selective in her use of caselaw, but also her legal
conclusions were due little deference because she was "factually selective in her
analysis and often ignored contradictory evidence." *Id.*

On appeal, Student contends the ALJ's decision should have been given
more weight by the district court simply based on the extraordinary length of the
hearing, the number of witnesses at hearing, and the number of pages in the ALJ's
Order. Student's Opening Brief, pp. 14-16. Further, Student argues that the ALJ's
Final Order "addresses each issue raised by Parents and breaks down the analysis
by each specific IEP." Student's Opening Brief, p. 14.

---

F.3d 1467, 1471-72 (9th Cir. 1993), *cert. denied*, 513 U.S. 825, 115 S. Ct. 90, 130
L.Ed.2d 41 (1994).

Student exalts form over substance, and page-length over substantive and reliable content. While the ALJ cited to applicable case law and statutes regarding some issues, the quality and quantity of the analysis and application is slim, as the district court noted. While the ALJ "referenced many portions of the transcript and the testimony of numerous witnesses," (*see* Student's Opening Brief, p. 15), Student offers no contradiction to the district court's objection to the absence of any presentation or discussion of the testimony of both parties' expert witnesses.[3]

---

[3] Other district courts, including those in the 9th Circuit, as well as the D.C. Circuit Court of Appeals have ruled similarly, finding that a factor weighing against such deference is where an ALJ fails to cite, recognize, or even discuss substantial portions of the testimony of relevant witnesses and documents, or fails to provide a well-reasoned analysis of her findings and conclusions; instead what is required is a written decision that "evinces his careful, impartial consideration of *all* the evidence and demonstrates his sensitivity to the complexity of the issues presented." *James M. ex rel. Sherry M. v. Hawai'i,* 803 F. Supp. 2d 1150, 1157, 1160 (D. Hawai'i 2011) (emphasis added) (deference appropriate where ALJ summarized testimony of teachers, administrators, therapists, and consultants involved in the process, and created detailed decision explaining her factual findings and legal conclusions); *see also Nalu Y. ex rel. Patty Y. v. Department of Educ., Hawaii*, 858 F Supp 2d 1127, 1133 (D Hawaii 2012) (hearings officer's ruling neither careful nor thorough where it completely "ignored critical testimony" and in fact disregarded such testimony in favor of weaker, contrary evidence); *C.C. v. Fairfax County Bd. of Educ.*, 879 F Supp 2d 512, 520-21 (ED Va 2012) (summarizing relevant case law regarding review of hearings officer decisions and noting that such cases held that, while hearings officer was not necessarily required to present detailed findings regarding credibility or the weight given to one side's witnesses or the other's, such cases at a minimum involved the hearings officer discussing or summarizing both parties' evidence and witnesses, even if the hearings officer ultimately disagreed with or gave less weight to one side's evidence or witnesses); *Gwinnett County School Dist. v. J.B. ex rel. D.B.*, 398 F Supp 2d 1245, 1267 (ND Ga 2005) (federal district court, after conducting

13 - DISTRICT'S ANSWERING BRIEF

Because Student has failed to show that the district court erred in giving little weight to the ALJ's opinion, and Student has not established that the ALJ's opinion was well-reasoned, thorough, and careful, the district court's decision should be upheld.

**C. The District Court Did Not Err In Its Determination That Any Procedural Violations Of The IDEA Did Not Deny Parents The Opportunity To Meaningfully Participate In The IEP Development Process.**

Student next challenges the district court's determination that the District did not deny the parents the opportunity to meaningfully participate in the IEP development process because of violations of the IDEA that were procedural, but no substantive in nature. Student Opening Brief, p. 15.

> **1. The Legal Standard Established By the IDEA Requires There To Be Either (1) A Loss Of Educational Opportunity For A Student, Or (2) A Serious Infringement Of The Parent's Opportunity To Participate In The IEP Process Before A Denial Of FAPE Can Be Found.**

The district court properly noted case law providing that a procedurally defective IEP team or IEP process violates a District's obligation to provide a FAPE *only if* the procedural violation resulted in a loss of educational opportunity

---

its own review of the transcripts and exhibits, holding that there was insufficient evidence to support hearings officer's conclusion of school district liability and that hearings officer's decision not entitled to deference where "where crucial evidence is missing."); *Reid ex rel. Reid v. District of Columbia*, 401 F3d 516, 521 (DC Cir 2005) (holding that hearings officer decision entitled to "little deference" where it lacked reasoned and specific findings and required district court to further explore administrative record for evidence on the issue).

for the Student or seriously infringed on a parent's opportunity to participate in the IEP process. District Court Opinion and Order, p. 11 (ER 19) (citing *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23*, 960 F2d 1479, 1484 (9th Cir 1992)).

The district court also noted that the IDEA itself requires parental participation only in one respect: The right "to participate in meetings with respect to the identification, evaluation, IEP and educational placement of the child, and the provision of a free appropriate public education to the child." OAR 581-015-2190(1). District Court Opinion and Order, p. 13 (ER 22-23).

**2. The Federal District Court Properly Found That The District's Alleged Failure To Send Prior Written Notices ("PWNs") To The Parents Did Not Constitute A Denial Of A Free Appropriate Public Education ("FAPE").**

Student argues the school district "repeatedly ignored its obligation to send PWN [Prior Written Notice]," and claims there were "many such failures by District [to provide PWN.]" Student's Opening Brief, pp. 19-20. Student in total references only four instances of such a failure. Student's Opening Brief, pp. 19-20. Of those four, one is not an instance where a PWN was legally required, and another instance is one that was never argued before the ALJ, nor mentioned by the ALJ in her decision[4].

---

[4] The ALJ found that the District denied the Parents the opportunity for meaningful participation by failing to send a PWN on only two occasions: (1) after the District's verbally declined to increase speech services from 30 minutes to 2 hours,

The first allegation of Student mentions was the District's failure to provide Prior Written Notice (PWN) documenting its refusal to increase speech services from 30 minutes to two hours of speech therapy per week, as the Parent requested during a Sept. 6, 2011 IEP meeting, although Student admits that the "District verbally denied this request" at the IEP meeting. Student's Opening Brief, pp. 19-20 (citing to ER 408). In fact, school district administrators discussed this request with Student's Parent at the Sept. 6, 2011 IEP meeting, and shortly afterward informed the Parent that a trial of increased services, to one hour per week, would be implemented, and that the level of services was endorsed by the IEP team in November 2011 and a PWN was issued at that time, as the court found. District Court Opinion and Order, p. 16 (ER 26-28). Thus, the Parents had two opportunities to speak to the need for additional speech services. The district court properly found that IDEA does not require that all of Parents' requests be granted, only discussed, citing *Target Range*, 960 F.2d at 1482 and *Lachman v. Illinois St. Bd. Of Educ.*, 852 F.2d 290, 297 (7th Cir. 1988).

---

but then increased the speech service to one hour per week on a trial basis; and (2) when the IEP team rejected the Parents' request for reevaluation (which was communicated in a PWN), but then District Coordinator Kim Shearer had the District's Occupational Therapist ("OT") perform such an evaluation pursuant to the Parent request and failed to send a second PWN stating the request had been complied with. ALJ's Final Order, p. 48 (ER 269). The other two alleged failures Student now references, however, were not addressed by the ALJ or the district court. *See* ALJ's Final Order, pp. 49-50 (ER 270-71).

The next incident mention by Student is the allegation that in March 2010, the District conducted an evaluation of Student without Parents' consent. Student's Opening Brief, p. 20 (citing ER 592, 764). In fact, both the ALJ and the District Court agreed that this was harmless error because "the District took several actions to give Parents actual notice of the 2010 evaluation." District Court Opinion and Order, p. 15 (ER 26); *see, also,* ALJ's Final Order, p. 49 (ER 270) (noting that Ms. Harris obtained verbal consent from the Parents before the evaluation was administered).

The third incident Student raises is the allegation that the District refused to change Student's math class despite Parents' request at the Nov. 14, 2011 IEP meeting. Student's Opening Brief, p. 20 (citing ER 366-67, 868). First, it should be noted that this allegation regarding PWN was never appealed to the district court. *See* District Court's Opinion and Order, pp. 14-17 (ER 24-29) (stating that Student only alleges three instances of a failure to provide PWNs)[5]. This is the first time that Student has made the argument that the District was required to provide a PWN for the conversation around math. Second, the evidence at hearing was that the Parents did not argue for more math services or a change in math goals – they

---

[5] The district court did note a controversy surrounding the math discussion at the November 2011 IEP meeting, but never in regards to whether a PWN should have been provided to the Parents. *See* District Court Order and Opinion, pp. 7 and 13 (ER 12 and 21-23).

simply preferred one math teacher and the title of one math course ("Pre-Algebra") over another ("Transitional Math"); evidence was that Student's math goals would be addressed regardless of which class he was enrolled in. This was not an issue even necessary to discuss at the IEP meeting because it was not a special education content issue, but a school scheduling and staff assignment issue.

The fourth specific incident alleged by Student as a violation was when the Parents disagreed with District's position that Student did not need occupational therapy (OT) services, but got no PWN when the District made its "unilateral decision." Student's Opening Brief, p. 20 (citing ER 368). In fact, this issue was discussed at the November 2011 IEP meetings, at which time the OT Specialist spoke to the issue, and the Parents had the opportunity to argue their case. ER 368.

Student argues in Student's Opening Brief, p. 20 that "it is extremely likely that, if afforded the proper opportunity, alternative educational possibilities would have been better considered had Parents been given a proper opportunity to meaningfully participate." Yet, the record shows that each of these issues *was* discussed in at least one meeting with the Parents. It is therefore impossible to see how their ability to "properly participate" was "seriously infringed by District's failures to send PWN."

The district court rightfully rejected (*see* District Court's Opinion and Order, p. 23) the ALJ's conclusion that failure to send the parents a Prior Written Notice ("PWN") of some decisions made, including those made in meetings where Parents were actually present and participating, automatically "resulted in a loss of the Parents' ability to meaningfully participate in the District's decisions *thus resulting in a denial of FAPE*." ALJ's Final Order 49 (ER 270) (emphasis added). In fact, as is well established in the Ninth Circuit, procedural errors such as the failure to send a PWN do not automatically constitute a violation of FAPE in many circumstances.[6] However, rather than engaging in the appropriate analysis of whether the Parents loss the ability to meaningfully participate the ALJ immediately jumped to the conclusion that a denial of FAPE occurred.

---

[6] Courts in the Ninth Circuit and nationally have determined that a procedurally defective IEP team or IEP process would violate a District's obligation to provide a FAPE only if the defect resulted in a loss of educational opportunity for the Student or seriously infringed on a parent's opportunity to participate in the IEP process. *R.B. v. Napa Valley*, 496 F 3d 932, 938 (9th Cir. 2007) (*citing with approval M.L. v. Federal Way School District*, 394 F 3d 634, 652 (9th Cir. 2005) and *W.G. v. Bd. of Trs. of Target Range Sch. Dist, No. 23 ("Target Range")*, 960 F2d 1479, 1484 (9th Cir 1992) ("Procedural flaws do not automatically require a finding of a denial of a FAPE. However, procedural inadequacies that result in the loss of educational opportunity [citations omitted] or seriously infringe the parents' opportunity to participate in the IEP formulation process [citations omitted] clearly result in the denial of a FAPE."). This harmless error standard adopted in *R.B. v. Napa Valley* was codified in the 2004 revisions in the IDEIA. 34 CFR § 300.513(a); ORS 343.167(3).

19- DISTRICT'S ANSWERING BRIEF

The district court rightfully rejected this approach. Instead of exalting technical compliance, the district court looked at substantive compliance with the intent of the parent-participation provisions of IDEA, which is "to allow a parent to attend and participate in meetings that concern the child's educational program." *See* OAR 581-015-2190. That intent was satisfied by the District's discussion of the Parents' requests.[7]

### 3. The District Court Properly Found That the District Did Not Fail To Consider Student's Initial Private Evaluations, Contrary To Student's Assertion.

Student argues "the District ignored Student's private evaluations to determine Student eligible for services under the category of Autism Spectrum Disorder (ASD), despite Student's evaluations stating otherwise." Student's Opening Brief, pp. 21-22. Student claims that the District did not review a February 9, 2011 evaluation by Dr. Bob Buckendorf (i.e., a speech-language pathologist who diagnosed Student as having a language disorder, but not ASD) during a March 29, 2011 IEP meeting. *Id*. Additionally, Student claims the District ignored the evaluations of the Child Development and Rehabilitation Center ("CDRC") and Dr. McCoy who ruled out ASD as a diagnosis for Student. *Id*. Student alleges that "[t]he district court properly found a harmful procedural

---

[7] On a technical level, no PWN was required in these two instances since there was no change or refusal to change the IEP, but rather the requests were put on hold

violation in failing to review this evaluation, because District denied Parents the opportunity to meaningfully participate and denied Student a FAPE."

However, Student is in error as to the district court's finding. The district court concluded that the school district violated the IDEA "for failing to consider the *updated* Ensroth and Buckendorf reports when drafting the November 2011 IEP." District Court Opinion and Order, p. 18 (ER 32) (emphasis added). The District did not appeal this conclusion. Contrary to the assertions in Student's Opening Brief, the district court did not find any failure by the District to consider the CDRC report and the initial (i.e., Feb. 2011) Buckendorf evaluation. In fact, the district court found that the District's speech therapist, Nancy Hemry, relied heavily on Buckendorf's initial assessment to prepare for the March 29, 2011 IEP meeting. District Court Opinion and Order, p. 18 (ER 31).

Although the district court found that the District should have considered the updated reports when drafting the November 2011 IEP, the district court found that the ALJ's remedies (i.e., continuing weekly counseling to Student until Student reached the age of 21 or the Parents agreed to let the District stop services) "went beyond the remedy the court believes appropriate." District Court Opinion and Order, p. 38 (ER 65).

---

until the results of the trial period were available to the IEP team.

**D. The District Court Used The Correct Legal Standard When It Properly Held That The District Did Not Fail To Provide Student A FAPE.**

Student alleges that the district court erred in its conclusion that there was no denial of FAPE in the areas of (1) Student evaluations, (2) the creation and implementation of Student's IEP, and (3) Student's educational placement. Student's Opening Brief, p. 22. These are areas where the district court reversed the conclusions of the ALJ, who referred to the IEP as "the primary mechanism by which [the Special Education laws] work to *ensure* a FAPE." ALJ's Final Order, p. 54 (ER 275) (brackets and emphasis added).

The district court, on the other hand, applied the legally appropriate standard to find compliance with IDEA – whether the IEP outlines an education program "reasonably calculated to enable the child to receive educational benefits," rather than to guarantee a particular result or to maximize the potential of the Student. District Court Opinion and Order, p. 11 (ER 19) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206-07 (1982). As noted by the district court, an "appropriate education" does not amount to providing services designed to maximize a student's potential. District Court Opinion and Order, p. 23 (ER 39) (citing *Rowley* at 189-90).[8]

---

[8] As noted before, the Ninth Circuit and other courts around the country have elaborated that the appropriate focus is whether the IEP is reasonably calculated to provide *some* meaningful educational benefit. *A.I. ex rel. Iapalucci v. District of*

Because the district court applied the correct legal standard while the ALJ did not the district court's conclusions should be upheld.

> **1. The District Court Did Not Err In Finding That The District Created Appropriate Transition Goals In The March 2011 And November 2011 IEPs.**

Student alleges that the district court erred by finding that the District created appropriate postsecondary transition goals in the March 2011 and November 2011 IEPs, because the District had failed to assess Student's needs or provide transition services on the Student's April 2010 IEP. Student's Opening Brief, pp. 22-25.

Student proposes, "By definition, a transition plan must be based on age appropriate transition assessments. 20 U.S.C. ¶1414(d)(1)(A)(i)(VIII)(aa). It is impossible for District to create measurable postsecondary goals if District did not conduct transition assessments." Student's Opening Brief, p. 23.

The district court, however, noted that "[t]he IDEA requires that school districts evaluate students 'in all areas of *suspected disability*.' [citation omitted] Although students with disabilities have a heightened need for transition services, a need for transition services is not itself a disability" and therefore cannot be the

---

*Columbia*, 402 F Supp 2d 152, 163 (D DC 2005) (emphasis added). In other words, districts are obliged only to provide a "basic floor of opportunity" through an IEP designed to provide educational benefit to the disabled student. *Seattle School Dist., No. 1 v. B.S.*, 82 F 3d 1493, 1500 (9th Cir 1996).

basis for a conclusion that the school district failed in its evaluation responsibilities. District Court Opinion and Order, p. 21 (ER 36) (emphasis in original). Instead, the district court considered the transition assessments issue under the question of whether the Student was thereby denied a FAPE. Student offers no argument to the contrary. Student's Opening Brief, pp. 22-23.

Student argues another failure to evaluate, or, more specifically, a failure to reevaluate, after the school district received information that "Student had a mental breakdown during the summer" of 2011. Student's Opening Brief, p. 23.

But, the district court noted that the school district had given the Student two psychological evaluations between 2008 and 2011, both of which measured Student's anxiety; such evaluations satisfied the evaluation requirement.[9] Student's Opening Brief contains no citation to authority stating that such an evaluation would not satisfy any requirement. Instead, Student cites 20 U.S.C. ¶1414(a)(2)(A), which requires reevaluation "if the child's parents or teacher requests a reevaluation" or "if the local education agency determines that the educational or related services needs, including improved academic achievement and functional performance of the child warrant a reevaluation." Once again, Student has cited no evidence that the "local education agency" had made any such

---

[9] However, the district court still entertained arguments as to whether the district had properly served Student's unique needs by addressing her anxiety.

interpretation, nor has there ever been a showing (or even assertion) that the Parents made such a request for reevaluation of the Student's mental health, including anxiety, following the Summer of 2011. Parents request for reevaluation, taken up at the October 3, 2011 meeting, did not include this issue. *See* Ex. S78-79 (ER 392-98).

Thus, the Student has failed its burden of proving that the district court erred in finding that the school district did not violate the evaluation requirement of IDEA.

**2. The District Court Did Not Err In Finding That Student's IEP Was Reasonably Calculated to Provide Student With An Educational Benefit, Did Not Treat Student Generically, And Had Goals That Were Measurable.**

Student argues that the district court erred when it found that all of the Present Levels ("PLs"), Annual Goals ("AGs"), and Short-term Objectives ("STOs") for all of the Student's relevant IEPs were objectively measureable. Student's Opening Brief, pp. 26-28. The Student states all PLs, AGs, and STOs must be "objectively measurable" or else the Student will receive no educational benefit, and thus the District will not have provided the Student a FAPE.

The district court looked to the purpose of the PLs, AGs, and STOs; rather than judge whether a FAPE is provided by looking to technical compliance (such as Student advocates): "An IEP complies with the IDEA if it outlines an

25 – DISTRICT'S ANSWERING BRIEF

educational program 'reasonably calculated to enable the child to receive educational benefits,' *Rowley*, 458 U.S. at 206-07. [...] A student's educational program outlined in the IEP provides a FAPE if it '(1) addresses the child's unique needs, (2) provides adequate support services so the child can take advantage of the educational opportunities,' and (3) 'comport[s] with the goals and objectives on the student's individualized education program.' *Capistrano*, 59 F.3d at 889, 89." District Court Opinion and Order, p. 23 (ER 39).

The district court then rejected all three of the ALJ's reasons as to why she concluded that the school did not provide a FAPE. District Court Opinion and Order, pp. 23-26 (ER 40-46). The district court concluded that "the record does not demonstrate that the April 2010, March 2011 and November 2011 [IEPs] treat Student generically," and backs up this conclusion with examples of objectively measurable goals and detailed PL statements. *Id.* at 24 (ER 41). "Further, the court could find no support for the ALJ's contention that the IDEA requires a present level statement to explain in detail why or how the child was learning the subject matter described in her present levels." *Id.* (ER 41). Finally, the district court concluded that the PL statements in the Student's IEPs did not make it "difficult or impossible" for the reader to determine how Student's disability affects her

involvement and access to the educational curriculum. *Id.* (ER 41-42). The district

court, once again, gave examples supporting that legal conclusion. *Id.* (ER 41-42).

The district court further found that the AGs and STOs in the Student's IEPs

are uniquely designed to address Student's difficulties with the general educational

curriculum, as required by the IDEA, and they are measurable, citing Student's

expert witness Christine Moore that all four IEPs meet that standard and the

"IDEA requires no more." District Court Opinion and Order, p. 25 (ER 42).

In summary, the district court rejected the ALJ's hyper-technical

requirements, just as other district courts have done in similar cases. As a matter of

law, the IDEA does not require that criteria for IEP goals and objectives be

"objectively" measurable or trackable, especially when it comes to behavioral

goals and objectives.

In *Ashland School District v. Parents of R.J.*, 585 F Supp 2d 1208, 1228-29

(D Or 2008), *aff'd* 588 F3d 1004 (9th Cir 2009), the federal district court in Oregon

reversed an Oregon ALJ and rejected similar arguments regarding progress and

measurability to those raised by Student in this case:

> The ALJ's opinion appears to presume that a school must make each
> social and behavioral objective numerically quantifiable and then
> furnish numerical progress reports, for instance, "student
> demonstrates productive classroom behavior 32% of the time," or
> "student had an average of 3.2 positive social interactions each day."
> For many if not most teenage students, that degree of reporting is

neither feasible nor desirable. The IEP and the reports provided to
Parents quantified that which is readily capable of being quantified,
such as the number of hours per week a particular service would be
provided, a description of the service, R.J.'s attendance record, and
her grades . . . there is no easy way to quantify goals such as having
the right friends or making good decisions.

See also West Linn-Wilsonville School District v. Student, 2014 WL 3778571, *13

(D Or July 30, 2014) (Oregon federal district court citing Ashland favorably and

upholding conclusions by Oregon ALJ that present level information and goal and

objective criteria in autistic student's behavioral IEP goals did not violate standard

in IDEA where such goals did not use objective criteria but instead used subjective

ratings scale such as student displaying undesirable behaviors "often" or "rarely").

Further, even where an IEP team decides to place requirements in an IEP for

regular progress reports to the parents, the IDEA does not require that such

progress reports provide numerical specificity or that the reports contain

information on all short-term objectives in the IEP. Van Duyn ex rel. Van Duyn v.

Baker School Dist. 5J, 2005 WL 50130, *13-14 (D Or Jan 11, 2005) (holding that

even where team wrote requirement for regular progress notes to parent, neither the

lack of the required number of progress reports, nor the limited content (only a

single percentage for academic skills areas such as math and lack of information

about whether IEP goals or short-term objectives had been met) did not amount to

violation of IDEA where progress reports contained at least some "valuable

information which the parents can use to assess [the student's] progress" and where the "IEP does not require any specific type of progress assessments."), *aff'd in part and reversed in part on other grounds* 481 F3d 770 (9th Cir 2007), *opinion amended and superseded on other grounds* 502 F3d 811 (9th Cir 2007); *see also M.M. ex rel. L.R. v. Special School Dist. No. 1*, 512 F3d 455, 460-61 (8th Cir 2008) (holding that progress notes issued by school district were sufficient even where they reported only that student "made adequate progress on her reading and math goals, but insufficient progress on her behavioral goals.")

### 3. The District Court Did Not Err When It Refused To Require All District Teachers To Adopt The Teaching Method Of A Single Teacher That Student's Parents Liked.

The Student argues that the IEPs were not reasonably calculated to provide Student with educational benefit "because District refused to employ teaching methods that allowed Student to learn" – that is, the teaching methods espoused by regular education language arts teacher Eric Larsen. Student's Opening Brief, pp. 31-32. Student's only support for this argument is that some staff agreed that checking often throughout class to make sure the Student understood the reading material was "best." However, such a conversation does not create a legal obligation to use this or any other teaching method. Student does not cite to any statute or regulation that advances that argument, whereas the district court, in

overturning the ALJ's ruling, cited precedent setting caselaw and caselaw from around the country that schools need not do what is "best" or maximizes a student's potential. District Court Opinion and Order, p. 25 (ER 43-44). Similarly, the district court also noted that it could find "no authority for the ALJ's conclusion that a school district may be required to teach each special education student with teaching methods which work best for that student." *Id.* (ER 43). Moreover, the district court discussed how, even ignoring the relevant caselaw, requiring the all of Student's teachers to adopt the "Larsen method" would be impractical and detrimental to Student and her peers. *Id.* at 26 (ER 44).

The district court's decision corrects error on the part of the ALJ, who attempted to set a higher standard of "maximizing outcomes" rather than "some educational benefit." The standard used by the district court is supported by case law and common sense.

### 4. The District Court Did Not Err In Finding That The District Provided Adequate Transition Services During All But Two Months After The Student Turned Age 16.

Next, Student contends that since the district court found that the District had not completed age-appropriate assessment for transition-eligible students, then any transition plan would inevitably be inadequate – not just for 2010, but also for all subsequent IEPs. Student's Opening Brief, p. 32. No support for this assertion is

30- DISTRICT'S ANSWERING BRIEF

given, other that "it is impossible for District to create appropriate postsecondary goals without any age appropriate transition assessments specific to Student's unique needs." *Id.*

The district court, however, once again looked to the ultimate effect of the transition plans created and implemented by the District, rather than hyper-technical interpretations of the law. District Court Opinion and Order, pp. 27-29 (ER 46-51). The District has not challenged the fact that it did not have a transition plan included as part of the 2010 IEP, and therefore in place when the Student turned 16. Thus, Student did not have the benefit of a transition plan or services for the next six weeks until a new IEP was approved on March 29, 2011. As such, the district court found a violation for that time period. *Id.* at 29 (ER 48).

But, under the March 2011 IEP, the district court concluded that the transition plan goals to access community college and to access the community by driving, were "reasonable post-secondary goals for a high-school student working toward a modified diploma." *Id.* at 29 (ER 49). Further, the court found that the November, 2011 IEP, like the March, 2011 IEP, "adequately addresses Student's transition needs," and actually contains a more detailed description of post-secondary goals and transition services, including a course of study related to her goals, including participation in the District's work experience and community

living programs was adequate to meet her transition goals. *Id*. at 29-30 (ER 50-51). And, while the assessment done in March of 2011 was not adequate, according to the court, by December of 2011 the District had implemented a formalized assessment, which would allow the District to facilitate Student's exploration of career paths.

As noted by the district court, the obligation to provide transition services is defined by statute to allow for broad consideration of a range of services, including vocational and career training that are needed to meet the individual needs of a child with a disability. District Court Opinion and Order, pp. 27-28 (ER 46). Decisions regarding transition services must be made on the basis of the child's individual needs, taking into account the child's strengths, preferences and interests. 71 Fed. Reg. 46,579 (2006). Transitional services can address areas such as academic/life-long learning, workplace readiness, occupationally specific skills, self-determination, daily living skills, health and physical care, leisure, mobility, money management, and social skills. *See, e.g., Mason Community Sch. Dist*, 21 IDELR 241 (SEA IA 1994).

In this case, because the IEP team determined that Student would earn a modified diploma, she would consequently be entitled to education services – not just to age 18 like her regular education peers – but rather *until age 21*, which

means that the IEP team had 5 years after Student's 16th birthday to plan for and teach transition skills.

Student's Transition Plan of spring 2011 noted that Student would participate in a work experience program during her senior year, in order to obtain basic work skills, and would also participate in the community living program (in-school) in order to aid her in learning daily living skills, such as how to access public transportation and use a bank account." District Court Opinion and Order, p. 29 (ER 49). The court noted that there was an adequate transition assessment conducted in December 2011. *Id.* at 29-30 (ER 49-50). There was no evidence that the absence of an adequate transition assessment until December of 2011 would delay Student's accessing the out-of-school work experience services and in-school life skills programs during her senior year, especially in the context of the 5-year period it had remaining for transition planning and services described above. The inclusion of the specific and detailed transition plan in the March 2011, and in the revised IEP of November 2011, provided a more than adequate transition plan for the 16-to-18-year-old portion of the transition period.

Thus, because the District rectified its early deficiency in assessment and planning for transition services, and because those services were designed to be

provided over several years, the district court appropriately did not order any remedial action.

### 5. The District Court Did Not Err In Finding That The District Appropriately Addressed Student's Anxiety Needs.

The district court once again corrected the ALJ's failure to use a correct legal standard in determining whether the District failed to adequately deal with Student's anxious behaviors. District Court Opinion and Order, p. 30-32 (ER 51-56). The district court noted that the standard used for judging a district's efforts in implementing behavioral strategies is not a high one because all that is required is a "good faith effort" to help the student achieve the educational goals outlined in the IEP, not whether the district could have done more. *Id.* at 30 (ER 51) (citing *M.M. v. Dist. 0001 Lancaster County Sch.*, 702 F.3d 479, 487 (8th Cir 2012)).

The district court, after carefully analyzing evidence of alleged instances of anxiety in and out of the classroom[10], and applying the correct legal standard, found that the District made a good-faith effort to create an academic plan to minimize Student's anxiety during the time periods covered by the May 2009

---

[10] The district court carefully analyzed evidence of instances when Student exhibited anxious behaviors that made her physically ill or act irrationally, and found that "[n]one of these scenarios occurred during class-time or had an affect on Student's ability to learn." District Court Opinion and Order, p. 31 (ER 53). Less severe manifestations of anxiety occurred in the classroom, but were addressed in a variety of ways through curriculum modifications and accommodations. *Id.* at 32 (ER 54).

IEP[11]. District Court Opinion and Order, pp. 31-32 (ER 54-55). Student achieved academic success and made some progress in her self-management curriculum. *Id.*

Student protests that the 8th Circuit's "good faith" standard is not the precedent in this circuit, but furnishes no contrary determination by the Ninth Circuit on this standard for implementing behavioral strategies. Student's Opening Brief, pp. 34-35. Rather, Student argues that the generic standard for all parts of the IEP, that the IEP is "reasonably calculated to enable the child to receive educational benefits," must be applied. *Id.* at 35. However, the district court's analysis shows that under either standard the 2009 IEP contained a self-management plan that was "reasonably calculated" to allow Student to obtain educational benefits. District Court Opinion and Order, p. 33 (ER 56-57).

The court cites evidence of those benefits obtained. *Id*. Once again, the court corrects an erroneous ALJ's conclusion that aims to hold the school district to efforts that maximize the potential of the Student.

---

[11] The district court found that the March 2011 and November 2011 IEPs did not meet this standard because they did not contain a self-management goals and curriculum that had been part of the 2009 and 2010 IEPs, and the court found insufficient evidence that the elimination of the self-management goal was made in good faith. *Id.* at 32. The court's conclusion regarding the 2011 IEPs is not on appeal.

**6. The District Court Did Not Err In Finding That Student's Placement Determination Met The Requirements of the IDEA.**

Both the district court and the ALJ rejected the Student's assertion that the placements chosen by the IEP team, with the Parents' participation and no objection, was somehow inadequate. District Court Opinion and Order, p. 36; and ALJ's Final Order, pp. 63-64 (ER 284-85). The district court found that the placement was consistent with the IDEA's policy of "mainstreaming," as well as the "least restrictive" requirement of the IDEA. District Court Opinion and Order, p. 36. Essentially, the IEP team chose a placement reasonably calculated to provide Student with more educational support and peer interaction. *Id.*

## CONCLUSION

This is an extraordinarily "dense" case, with multiple issues of law and fact. Although the District appealed many portions of the ALJ's Final Order (as did Student), the District has not chosen to appeal any part of the District Court's Opinion and Order, even those that were unfavorable to the District. The District has chosen not to appeal any of the district court's findings because, unlike the ALJ's findings, the district court was thorough and careful in its analysis.

Although Student has appealed those portions of the district court's findings unfavorable to Student, Student has not appealed the district court's elimination of six of the seven remedies ordered by the ALJ. Those six remedies represent an

36- DISTRICT'S ANSWERING BRIEF

overreaching of authority that the ALJ did not have. For example, the ALJ dictated that all of the special education teachers, when delivering SDI, must use the teaching techniques used by a regular education teacher teaching Student writing "unless the District determines that other learning techniques will be more beneficial for the student." ALJ's Final Order, p. 65 (ER 286). As noted above, the IDEA does not dictate teaching methods to teachers who work in a variety of settings, ranging from the hands-on animal science classes, to treble choir, to Fundamental Math, to American Studies. A one-size-fits-all approach is beyond the scope of authority and a notable excess of intervention from an ALJ who has no educational licensing or training, in regular or special education.

Likewise, the order of a minimum of a weekly 60-minute counseling session to address Student's at school behaviors to continue until Student reaches the age of 21 unless the Parents want to cancel the service is unsupported, especially since the ALJ admitted that "the evidence regarding the amount of time necessary for behavioral counseling was more sparse." ALJ's Final Order, p. 65 (ER 286).

Similarly, the district court found the order of compensatory services unwarranted based on the evidence. Indeed, even the ALJ had found no support for an award of additional speech or social skills instruction, yet those were the only areas where the Parent had sought any additional instruction.

Finally, the ALJ's order of transition services was unnecessary and incorrect given that the District had in place a transition plan that would meet all requirements of the IDEIA within the available years prior to age 21 and no particular timing is required. The order that the District would provide driver's education training simply because a goal is included in the Transition Plan that the student be able to drive reflects the ALJ's fundamental misunderstanding that the transition plan is one to be accomplished by not just the school, but outside agencies and the home as well.

In summary, the ALJ in this case continually applied a legally indefensible standard of "maximizing" the educational benefit to Student, regardless of the testimony that was heard at hearing. On appeal, the district court then reevaluated all of the evidence whilst applying the appropriate legal standards established by extensive caselaw. The district court then eliminated a plethora of remedies that were above the standard of "appropriate relief," while ultimately finding for the District on the majority claims but for the Student on some claims.

Submitted this 28th day of November 2014.

THE HUNGERFORD LAW FIRM

/s/ Nancy Hungerford_____
Nancy J. Hungerford, OSB No. 812685

38- DISTRICT'S ANSWERING BRIEF

E-mail:  Nancy@hungerfordlaw.com
Joel E. Hungerford, OSB No. 140940
E-mail: Joel@hungerfordlaw.com
Telephone:  (503) 781-3458
Facsimile:  (503) 655-1429

Of Attorneys for Plaintiff–Appellant

# CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and the Ninth Circuit Rule 32-1, the attached Answering Brief is proportionately spaced, has a typeface of 14 points or more, and contains 6,674 words, which is less than the 14,000 word limit under Fed. R. App. P. 32(a)(7)(b)(i).


DATED: November 28, 2014.

THE HUNGERFORD LAW FIRM


/s/ Nancy Hungerford_____
Nancy J. Hungerford, OSB No. 812685
E-mail:  Nancy@hungerfordlaw.com
Joel E. Hungerford, OSB No. 140940
E-mail: Joel@hungerfordlaw.com
Telephone:  (503) 781-3458
Facsimile:  (503) 655-1429

Of Attorneys for Plaintiff–Appellant

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Plaintiff-Appellee knows of no related cases.

DATED: November 28, 2014.


THE HUNGERFORD LAW FIRM


/s/ Nancy Hungerford_____
Nancy J. Hungerford, OSB No. 812685
E-mail:  Nancy@hungerfordlaw.com
Joel E. Hungerford, OSB No. 140940
E-mail: Joel@hungerfordlaw.com
Telephone:  (503) 781-3458
Facsimile:  (503) 655-1429

Of Attorneys for Plaintiff–Appellant

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DISTRICT'S ANSWERING**

**BRIEF** on the following named person on the date indicated below by:

[   ]   mailing with postage prepaid;

[   ]   hand delivery;

[ x ]   electronic delivery;

[   ]   overnight delivery

to said person a true copy thereof at their last-known address indicated below:

Diane Wiscarson
Wiscarson Law
510 SW 3rd Avenue, Suite 439
Portland, OR 97204

  Of counsel for Defendant-Appellee

DATED:  November 28, 2014.


THE HUNGERFORD LAW FIRM


/s/ Nancy Hungerford_____
Nancy J. Hungerford, OSB No. 812685
E-mail:  Nancy@hungerfordlaw.com
Joel E. Hungerford, OSB No. 140940
E-mail: Joel@hungerfordlaw.com
Telephone:  (503) 781-3458
Facsimile:  (503) 655-1429

Of Attorneys for Plaintiff–Appellant